## COMMONWEALTH *vs.* HENRY CLARK.

An exchange of intoxicating liquor by a distiller, for grain from which to distil such liquor, is a sale within the meaning of *St.* 1855, *c.* 215, §§ 15, 17, whether the liquor is delivered at the time of receiving the grain, or afterwards.

The omission of the defendant in a criminal case to call as a witness a person in his employ and interest, who could probably explain facts, already proved, tending to show the defendant's guilt, if capable of being explained favorably to the defendant, may properly be commented on by the prosecuting officer in his argument to the jury, as bearing upon the question of the defendant's guilt.

On trial of an indictment for being a common seller of intoxicating liquors, a witness for the government testified that he asked the defendant, who was a distiller, and was then in debt to him, to let him have two barrels of gin, to which the defendant replied that he could not sell any; that some weeks after, two barrels of gin were brought to his shop by strangers; and several months afterwards, and after this indictment was found, no person having meanwhile claimed the gin or demanded payment for it, another stranger called upon him and claimed the gin as his. *Held,* that the defendant was entitled, on cross-examination of the witness, to ask for the whole conversation between him and the person who claimed the gin at the time of such claim; but was not entitled to ask the witness what, if anything, was said, about this gin at a subsequent independent conversation between the witness and the defendant.

Evidence of at least three several sales of intoxicating liquor is necessary to prove the offence of being a common seller, under *St.* 1855, *c.* 215, § 17.

Counts for manufacturing for sale, for being a common seller and for single sales of intoxicating liquor, contrary to *St.* 1855, *c.* 215, may be joined in the same indictment.

An indictment on *St.* 1855, *c.* 215, § 17, for manufacturing intoxicating liquor for sale, need not allege the kind or quantity of liquor, nor aver that the liquor was manufactured for sale within this commonwealth, nor that it was manufactured with intent to sell it within this commonwealth.

An indictment, which alleges that the defendant, " without any license, appointment or authority therefor, was a manufacturer of intoxicating liquor for sale," sufficiently negatives all authority of the defendant to-manufacture for sale under any of the provisions of *St.* 1855, *c.* 215.

INDICTMENT on *St.* 1855, *c.* 215, alleging in the first count that the defendant, " without any license, appointment or authority therefor, was a manufacturer of intoxicating liquor for sale;" in the second count charging him with being a common seller; and in the third and subsequent counts with single sales. Trial in the superior court in Franklin at November term 1859, before *Vose,* J.

William Burroughs, called by the Commonwealth, testified that he received gin from the defendant at his distillery several times, under the following circumstances: He carried grain to the defendant's distillery and left it, and told the defendant he wanted him to distil some spirits for him; and he got the spirits from the defendant at the distillery as he wanted it, two gallons for each bushel of grain; and the defendant drew it from a barrel in the distillery. Samuel Aldrich testified that he carried a bushel of grain to the defendant's distillery, and the defendant gave him two gallons of gin; and that at another time he carried four bushels and received four gallons of gin; that the defendant " agreed to distil the grain on shares," and was to give him two gallons of liquor for one bushel of grain, and that he received the gin when he carried the grain. David Johnson testified that he let the defendant have grain to distil " on shares;" that he carried grain and left it, and got liquor as he wanted it, five or six times, a gallon or two at a time; and that it was taken from a barrel containing other liquor. There was no evidence that either of these three persons received liquor distilled from their grain.

The defendant requested the court to instruct the jury, " that if they were satisfied, upon this evidence, that it was the *bona fide* intention of the parties that the grain should be distilled upon shares, the fact that either of them, when the grain was delivered, received from liquor then manufactured his proportional share of the product of his grain, that is, the same amount and kind that he would have received if he had waited for his grain to be distilled, would not constitute the transaction a sale by the defendant."

The court declined so to rule ; and instructed the jury " that delivering grain by these persons to the defendant under an agreement that he should distil that grain, and return a specific portion of the liquor distilled from it, and retain the rest as a compensation for his services in distilling, and his returning such proportion of the very liquor distilled from that grain, would not constitute a sale, within the meaning of the statute ; but if the jury were satisfied beyond a reasonable doubt that these persons or either of them delivered grain to the defendant, and received back from him, either at the time or subsequently, a quantity of intoxicating liquor, not distilled from that grain, in consideration for the grain so delivered, and intended as payment for the grain, such a transaction would constitute in law a sale, whatever agreement the parties may have made as to distilling the liquor on shares."

Josiah Alexander testified that " he asked the defendant to let him have a few gallons of gin; that the defendant said he couldn't sell him any, but would lend him some; and delivered to him three or four gallons, which the witness had drunk ; that he understood it was not a purchase, and expected to return to the defendant the same amount of gin."

The defendant requested the court to rule, " that if this was a *bona fide* transaction, and the liquor was actually lent with the intent of both parties that the same quantity of the same kind of liquor should be returned, the transaction would not be a sale." The court declined so to rule; and instructed the jury, " that if the defendant delivered liquor to Alexander, to be consumed by him, in consideration of a stipulation by Alexander to

return a similar quantity of the same kind of liquor, this would not be in law a loan, though so termed by the parties, but would constitute a sale within the meaning of the statute."

In support of the first count, the Commonwealth introduced evidence tending to show that the defendant had stored some fifty barrels of liquor manufactured by him, at a place about half a mile from his distillery, and that he and his son often went to the place and carried off small quantities of it, one or two barrels at a time. The defendant's son was not called as a witness, and the district attorney in his argument to the jury commented on the defendant's failure to call him, as tending to show the defendant's guilt.

The defendant requested the court to instruct the jury that they must find the defendant guilty, if at all, upon the evidence under oath in the case, and not from the absence of any evidence or witness who might have been produced but was not. The court declined so to rule; but instructed them that the omission by the defendant to produce evidence within his reach or control, which might have explained or qualified any of the facts relied upon by the Commonwealth to establish his guilt, was proper for their consideration.

The Commonwealth called Charles Osgood, who testified that, during the time covered by the second count, the defendant was indebted to him, and that he told the defendant, while passing the witness's shop in Northfield, that he wanted two barrels of gin ; that the defendant said he could not sell him any ; that a few weeks afterwards a stranger brought to his shop, about dusk at evening, a barrel of gin; and that a few weeks later, about the same hour, another stranger brought another barrel of gin and left it ; that he had never ordered gin of any one but the defendant; and that no one claimed the gin, or any pay for it, till since the finding of the indictment, when a stranger came to his store and claimed the gin as his. The defendant proposed to ask the witness what conversation he had with the stranger when he claimed the liquor. The question was objected to and ruled out. The witness also testified on cross-examination, that since the indictment was found he and the

defendant had attempted to settle their accounts. The defend-ant proposed to ask the witness what was said at the time of the attempted settlement, about the two barrels of gin; but the evidence was objected to, and excluded.

The defendant also asked the court to instruct the jury that at least three distinct sales must be proved, to make the defend-ant liable as a common seller; and that unless the jury were satisfied that three sales had been made they should acquit on the second count. But the court instructed the jury that the offence of being a common seller consisted in being engaged in the unlawful sale of intoxicating liquor as a business, during any part of the time charged in the indictment; that evidence of three distinct sales was sufficient to warrant a conviction; that if three distinct sales were not proved, still, if they were sat-isfied beyond a reasonable doubt that the defendant was engaged in the business of selling intoxicating liquor illegally during the time charged, they should find him guilty.

The jury returned a verdict of guilty on the first, second and third counts; and the defendant moved in arrest of judgment, 1st. " Because a count for manufacturing intoxicating liquor for sale, a count for being a common seller of intoxicating liquor, and counts for single sales, are united in the same indictment." 2d. " Because the first count does not allege that the defendant was a manufacturer of intoxicating liquors for sale in this com-monwealth; nor that the defendant intended to sell the liquor thus manufactured in this commonwealth." 3d. " Because the first count does not sufficiently negative the defendant's au-thority to manufacture." 4th. " Because the first count does not allege the quantity or kind of liquor manufactured." The court overruled the motion, and the defendant alleged excep-tions to all the rulings, refusals and instructions of the court.

*W. Griswold,* for the defendant.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.

BIGELOW, J. 1. We are of opinion that the jury were rightly instructed upon that part of the evidence in the present case, which was offered for the purpose of showing that the defend-ant had made sales of intoxicating liquor in violation of the

statute. The distinction between a sale and exchange of property is rather one of shadow than of substance. In both cases the title to property is absolutely transferred, and the same rules of law are applicable to the transaction, whether the consideration of the contract is money or by way of barter. It can make no essential difference in the rights and obligations of parties, that goods and merchandise are transferred and paid for by other goods and merchandise instead of by money, which is but the representative of value or property.

If there can be any doubt on the question whether an exchange can be deemed a sale at common law, it is quite clear that no such doubt can exist under the provisions of law upon which the indictment in the present case is founded. By *St.* 1855, *c.* 215, § 15, it is enacted that if any person " shall, directly or indirectly, on any pretence or by any device, sell, or in consideration of the purchase of any other property give to any person any spirituous or intoxicating liquor," he shall be subject to the penalties in that section provided. The intention of the legislature by this provision was manifestly to cover every case of the transfer of intoxicating liquors for value, in whatever form the consideration for such transfer might be given or paid.

But it is urged, and this is the main ground on which the defendant rests his argument in support of this exception, that § 15 relates only to the offence of making single sales, and that its terms, enlarging the usual definition of a sale, cannot be extended to § 17, which provides for the offence of being a common seller. The obvious answer to the argument is, that the offence of being a common seller is a compound one, consisting of three or more single sales made in violation of the provisions of the statute, to be proved in like manner and by the same evidence as under § 15. Such is the express enactment in § 17, which provides that any person, who shall be a common seller " in violation of the provisions of this act," shall be subject to the penalties therein prescribed. Any other construction of these provisions would open a wide door by which the statute could be readily evaded in one of its most important features. We think therefore, whether the transaction assumed between the

Commonwealth *v.* Clark.

parties the form of an exchange of grain for intoxicating liquor, or a loan of liquor, to be repaid by other liquor of similar kind and quality, it was competent for the jury to find that it was a sale within the true meaning of the statute. See *Mason* v *Lothrop*, 7 Gray, 358.

2. The omission of the defendant to produce his son as a witness to meet and explain the evidence offered by the government in support of the indictment was a proper subject of comment by counsel before the jury, and might well be considered by them in connection with the testimony in the case. The witness was in the employment of the defendant and in his interest, and could probably have given an explanation of some of the facts tending to show the guilt of the defendant, if they were susceptible of any construction favorable to his innocence. The failure to call the witness was not relied on as substantial proof of the charge by the government; other evidence had been offered to establish that, which was submitted to the jury with proper instructions. If this evidence, unexplained, tended to prove his guilt, and he failed to bring evidence within his control to explain it, his omission to do so was a circumstance entitled to some weight in the minds of the jury.

3. The conversation which the witness Osgood had with the person who claimed the gin in his possession seems to us to have been competent, on two grounds. It was a part of the same conversation which had been put in by the government. It was also part of the *res gestæ*. The fact that the gin was left with the witness by a person unknown to him, and was subsequently claimed by another stranger, had been proved by the government. It was therefore competent for the defendant to show the entire transaction and prove all that was said at the time the claim was made.

4. The conversation between the witness and the defendant at the time they attempted to make a settlement of their accounts was incompetent. It was an attempt to prove the declaration of the defendant in his own favor, made in a wholly independent conversation, of which no proof had been personally offered by the government.

5. The instructions as to the evidence necessary to convict the defendant of being a common seller were not in accordance with *Commonwealth* v. *Tubbs*, 1 Cush. 2, which prescribes the rule applicable to the amount of proof necessary to sustain this charge. The jury must be satisfied that at least three distinct sales have been made by the defendant during the time alleged in the indictment. These may be proved either by direct evidence of the actual sales, or by other proof which satisfied the jury that they have been made by the defendant. This rule is not changed by *St.* 1855, *c.* 215, § 17, which only enacts that three sales shall be *prima facie* evidence of the commission of the offence, but does not directly or by implication provide that the offence can be proved by any testimony which falls short of establishing the fact that three sales have been made by the party charged.

6. The several grounds of the motion in arrest of judgment have been substantially settled by previous decisions. That the indictment is not bad for including distinct offences in different counts is determined in *Commonwealth* v. *Hills*, 10 Cush. 530; that after verdict it is no sufficient ground for arresting the judgment that it is not averred that the liquor was manufactured for sale in this commonwealth is settled in *Commonwealth* v. *Jones*, 7 Gray, 415; and that all authority to sell or manufacture for sale is sufficiently negatived, and that it is not necessary to aver the kind or quantity of intoxicating liquor manufactured for sale by the defendant is within the principle of *Commonwealth* v. *Conant*, 6 Gray, 482, and cases there cited.

*Exceptions sustained; motion in arrest overruled.*